NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

MAURICIO ALONZO VASQUEZ, *Appellant.*

No. 1 CA-CR 19-0351
1 CA-CR 19-0356
(Consolidated)
FILED 6-25-2020

Appeal from the Superior Court in Maricopa County
No. CR2018-121280-001, CR2017-150696-001
The Honorable Marvin L. Davis, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Nicholas Chapman-Hushek
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Robert W. Doyle
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge Samuel A. Thumma[1] delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge D. Steven Williams joined.

**T H U M M A**, Judge:

**¶1** Defendant Mauricio Vasquez appeals from his convictions and sentences, arguing the superior court erred in failing to sanction the State more harshly for misconduct in obtaining his fingerprints after trial but before sentencing. Because Vasquez has shown no error, his convictions and sentences are affirmed.

### FACTS AND PROCEDURAL HISTORY

**¶2** In March 2019, a jury convicted Vasquez of two counts of aggravated assault, two counts of resisting arrest and one count of disorderly conduct, arising from separate altercations with law enforcement in November 2017 and April 2018. The court set an aggravation and sentencing hearing for April 2019. Two days before the hearing, the State obtained Vasquez's fingerprints, without defense counsel's knowledge or consent, for use in the aggravation phase.

**¶3** Vasquez moved to sanction the State for violating various of his constitutional rights, and for ignoring the rule-based directive that he had a right to have counsel present when he was fingerprinted. *See* Ariz. R. Crim. P. 15.2(a) (2020).[2] The court found his fingerprints were obtained in violation of Rule 15.2(a), suppressed the evidence, and set the aggravation hearing for one week later.

**¶4** The State then sought and obtained another set of fingerprints from Vasquez. The State used the new fingerprints at the aggravation and sentencing hearing to link Vasquez to his prior criminal convictions. After

---

[1] Judge Samuel A. Thumma replaces the Honorable Kenton D. Jones, who was originally assigned to this panel. Judge Thumma has read the briefs and reviewed the record.

[2] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

finding Vasquez had two prior historical felony convictions, the court sentenced him as a non-dangerous but repetitive offender to mitigated concurrent prison terms, the longest of which was seven years, followed by a two-year probation grant, and gave him credit for 521 days of presentence incarceration. This court has jurisdiction over Vasquez' timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1), 13-4031 and 13-4033(A).

## DISCUSSION

¶5        At the written request of the State made after a charge is filed, "the defendant must, in connection with the particular offense with which the defendant is charged[,] be fingerprinted." Ariz. R. Crim. P. 15.2(a)(1)(C). However, "[t]he defendant is entitled to have counsel present when the State takes [such] evidence." Ariz. R. Crim. P. 15.2(a)(2). Failure to follow these rules is sanctionable. *See* Ariz. R. Crim. P. 15.7(b).

¶6        Vasquez argues the court abused its discretion in failing to impose a more "meaningful" sanction against the State for taking his fingerprints contrary to established procedures. *See State v. Meza*, 203 Ariz. 50, 55 ¶ 19 (App. 2002). The superior court has considerable discretion in addressing a request for sanctions. *Meza*, 203 Ariz. at 55 ¶ 19. Sanction orders will be affirmed unless "no reasonable judge would have reached the same result under the circumstances," *Naranjo*, 234 Ariz. at 24 ¶ 29 (citation omitted), and the defendant is prejudiced as a result, *Delgado*, 174 Ariz. at 256 (citations omitted).

¶7        In addressing sanctions, "courts should consider 'the vitality of the evidence to the proponent's case; the degree to which the evidence or the sanctionable conduct has been prejudicial to the opposing party; whether the sanctionable conduct was willful or motivated by bad faith; and whether a less stringent sanction would suffice.'" *State v. Ramos*, 239 Ariz. 501, 504 ¶ 9 (App. 2016) (quoting *Meza*, 203 Ariz. at 57 ¶ 32); *see also* Ariz. R. Crim. P. 15.7(c). Vasquez argues these factors weigh in favor of precluding the State from alleging prior felony convictions or ever using his fingerprints against him. Vasquez' argument fails for several reasons.

¶8        First, the fingerprints were not vital to prove the existence of Vasquez's historical prior felony convictions. To prove a prior conviction, the State need only show that a prior conviction exists, and that the crime was committed by the defendant. *State v. Cons*, 208 Ariz. 409, 415 ¶¶ 15-16 (App. 2004). Although fingerprint evidence is one way to do so, the State also may rely on documents evidencing a prior conviction that identify the

defendant with sufficient particularity, including a physical description or photograph. *See State v. Carreon*, 210 Ariz. 54, 65 ¶ 54 & n.12 (2005); *State v. Baca*, 102 Ariz. 83, 87 (1967). Here, the records of the prior convictions contained Vasquez' full name, biographical data, a physical description, and a photo depicting multiple distinctive face tattoos the court was able to use to compare while observing Vasquez. Given the identifying information already associated with the prior convictions, the fingerprint evidence was not required to link them to Vasquez.

**¶9** Second, Vasquez was not prejudiced by the gathering or use of the fingerprint evidence. The State had a right, upon proper written request, to collect fingerprints from Vasquez, provided they were sought in connection with the charged offenses and his counsel had an opportunity to be present. *See* Ariz. R. Crim. P. 15.2(a)(1)(C). There was never any doubt that the State could obtain the evidence; the only question was when and how. Vasquez is not prejudiced by court orders that simply define the boundaries of when and how evidence will be collected that the State clearly has a right to obtain.

**¶10** Third, there is no indication the State acted in bad faith. Although the court disagreed with the State's authority suggesting Rule 15.2(a) did not apply, every mistake or oversight is not a willful violation of the rules. This court defers to the superior court's assessment of the State's motives based on that court's observations of the individuals involved. *See State v. Olquin*, 216 Ariz. 250, 252 ¶ 10 (App. 2007). There is nothing in the record to suggest that assessment was erroneous here.

**¶11** Finally, the sanction properly impressed upon the State the importance of complying with procedural rules. The court reminded the State that it cannot use evidence it improperly collected, even where it has a right to the evidence if properly requested. Although the State had sufficient opportunity for a "do-over" before the aggravation phase, Vasquez has not shown that the sanction was inappropriate.

**¶12** A discovery sanction "should cure that harm to the maximum practicable extent," *State v. Krone*, 182 Ariz. 319, 322 (1995), while "affect[ing] the evidence and the merits of the case as little as possible," *Jimenez v. Chavez*, 234 Ariz. 448, 452 ¶ 18 (App. 2014) (citation omitted). The record reflects that the court here fashioned a remedy sufficient to impress upon the State the importance of complying with the rules that preserved Vasquez' right to a fair trial. For these reasons, Vasquez has shown no abuse of discretion.

**CONCLUSION**

¶13      Vasquez' convictions and sentences are affirmed.



AMY M. WOOD • Clerk of the Court
FILED:   AA